IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
July 16, 2013 Session

**STATE OF TENNESSEE v. FELTON NEVILLE JACKSON**

**Appeal from the Criminal Court for Wilson County**
**No. 09-CR-416      David E. Durham, Judge**

---

**No. M2012-00828-CCA-R3-CD   Filed October 17, 2013**

---

Appellant, Felton Neville Jackson, was indicted by a Wilson County grand jury for especially aggravated robbery and aggravated assault. He was convicted of both charges, and the trial court sentenced him to concurrent sentences of twenty-five years and six years, respectively. He now appeals his convictions and sentences on the following grounds: (1) the trial court erred by allowing a police officer to offer an allegedly testimonial statement attributed to the victim; (2) the evidence was insufficient to sustain his convictions; and (3) his sentences are excessive. Following our review, we discern no error and affirm appellant's convictions. However, we vacate the judgments in this case and remand this cause for entry of a single judgment of conviction noting merger of the aggravated assault conviction into the especially aggravated robbery conviction.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Criminal Court Vacated;**
**Case Remanded**

ROGER A. PAGE, J., delivered the opinion of the court, in which D. KELLY THOMAS, JR., and CAMILLE R. MCMULLEN, JJ., joined.

Adam Wilding Parrish, Lebanon, Tennessee, for the appellant, Felton Neville Jackson.

Robert E. Cooper, Attorney General and Reporter; Clark B. Thornton, Assistant Attorney General; Tom P. Thompson, Jr., District Attorney General; and Howard Chambers, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

This appeal stems from the especially aggravated robbery and aggravated assault of Charles Hardy ("the victim") that occurred in the hotel room in which he resided.

## I. Facts

### A. Facts from Pre-Trial Hearing on State's Motion to Allow Evidence

The State filed a motion to allow Officer Joshua Lewis to testify that when he first encountered the victim, the victim told him that he had been asleep and was awakened by a large black male hitting him in the head with some sort of object (hereinafter referred to as the "first statement"). Further, the victim told Officer Lewis that he did not know the black male but that he "lived down the way" (hereinafter referred to as the "second statement"). The State's position was that the victim's first statement was nontestimonial in nature and that Officer Lewis should be permitted to testify with regard to it because the victim was unable to recall the details of the offenses due to the head injuries he sustained in the attack. The State conceded that the second statement was testimonial in nature and should be excluded from evidence.

At the hearing, Officer Lewis testified that he was an officer with the City of Lebanon Police Department. He and a fellow officer were dispatched to the Plaza Motel[1] on December 23, 2008, at approximately 4:45 a.m., to respond to a 9-1-1 call. When they arrived, they were unable to enter the victim's room, so they obtained a master key from hotel personnel. Upon entering the room, Officer Lewis observed that the room "was in shambles." Personal belongings were strewn about the room, and the mattress had been removed from the bed and was lying in front of the doorway. He and Officer Stone began to "clear" the room to ensure that the room was safe before allowing emergency personnel to enter the room, during which time Officer Lewis saw the victim lying on the box springs of the bed. He testified that there was "blood everywhere," including the floor, the mattress, the box springs, the ceiling, and the walls. After notifying medical personnel that the room was "clear," Officer Lewis approached the victim and asked him what had happened. The victim stated that "he was laying [sic] in bed . . . [and] . . . awaken[ed] to a big black guy beating him with a pipe." Officer Lewis assisted emergency personnel in loading the victim into the ambulance and secured the room.

On cross-examination, Officer Lewis confirmed that the victim's hotel room door was locked when they arrived and that he did not observe any signs of forced entry. He stated that the victim was conscious but lying on the box springs of the bed, covered in blood.

The defense called Officer Scott Massey, who prepared the affidavit in support of the search warrant for appellant's residence. In his affidavit, he asserted that "'as the ambulance

---

[1] Plaza Motel, Plaza Travel Lodge, and Plaza Inn Motel are used interchangeably by witnesses throughout the transcript. For ease of reference, we will refer to this location as the "Plaza Motel."

was loading [the victim] for transport, . . . the victim told Officer Lewis that he was asleep and awoke to a large black male beating him with a blunt object and that the suspect lived down the way.'"

The State recalled Officer Lewis, who clarified that the victim actually made two statements to him. One statement occurred in the hotel room during the initial contact. After Officer Lewis had secured the room and the victim was in the ambulance, Officer Lewis approached the victim and inquired as to the identity of the assailant. During that statement, the victim indicated that the black male "lived down the way." Officer Lewis recognized the seriousness of the victim's injuries and attempted to gather additional information, including perhaps a dying declaration, before the victim was transported. Officer Lewis classified the second statement as testimonial in nature.

The trial court considered the arguments of counsel and ruled that the victim's first statement was nontestimonial and was admissible under hearsay exceptions 803(2), (3), and (4) of the Tennessee Rules of Evidence.

## B. Facts from Trial

The State's first witness was Officer Lewis, who testified consistently with his testimony at the pre-trial motion hearing. The State also offered several photographs into evidence through Officer Lewis.

The next witness was John Wayne Engle, who lived in close proximity to the Plaza Motel. On the morning of December 23, 2008, he was walking his dog between 6:00 and 6:30 a.m. when he discovered checkbooks lying on the ground between his residence and the residence next door to him. He noticed several police officers in the vicinity and turned the checkbooks in to an officer.

Officer Matthew Dedman, an officer with the City of Lebanon Police Department, testified that he was working on December 23, 2008. His responsibility that day was to secure the crime scene van. When he was on duty, someone approached him and handed him some checkbooks. He turned the checkbooks over to Detective Massey.

The State next called Shirley Bogle, who resided in the Plaza Trailer Park, which was located directly behind the Plaza Motel. She testified that she placed a 9-1-1 call around 4:30 a.m. on December 23, 2008. The call was precipitated by appellant's arguing with a pregnant female. Ms. Bogle asked appellant and the female to move because they were standing very close to her dog, who was chained, and she feared that the dog might bite one of them. She observed appellant holding what appeared to be an umbrella and something "hanging[,] like

a purse or something . . . ." Ms. Bogle indicated that she called 9-1-1 because appellant and the female were in a "fight or a fuss," and because the female was pregnant, Ms. Bogle was concerned that appellant might harm her. In her call, she asked the police to patrol the area; she did not ask them to investigate or take any other action. She identified appellant in court.

On cross-examination, Ms. Bogle stated she was positive that the female was pregnant because she had seen her previously but did not know her personally. She acknowledged that what she thought was an umbrella could have been a flashlight. She confirmed that appellant lived in the same community, and she pointed out his residence on a map.

The State's next witness was Tabitha Donnelly. She pleaded guilty to criminal charges arising from this incident and received a sentence of fifteen years, to be served at 100% release eligibility. On the day in question, she had borrowed the victim's Jeep. Around 4:00 a.m., she was visiting an acquaintance and "was getting high" when appellant knocked on the back door. The owner of the home instructed Ms. Donnelly to open the door for him. Once inside, appellant asked Ms. Donnelly what she was about to do, and she told him that she was going to return the victim's Jeep. Appellant asked Ms. Donnelly if the victim usually had money in his possession, and she responded affirmatively. She asked appellant, "Why, do you want to rob him? Don't hurt him, just scare him." Appellant responded, "S**t, it's Christmastime. I ain't got no more dope. My pockets is [sic] empty. I'm down with whatever."

Ms. Donnelly and appellant then left, and she drove appellant to the Plaza Motel at the entrance of the parking lot. She continued through the parking lot and parked outside of the victim's room. She entered the victim's room and sat down in a chair. The victim asked Ms. Donnelly if she had locked the Jeep. She answered that she had not, and she walked outside to do so. At that point, appellant walked into the room. Appellant approached the victim, who was in bed, and asked for all of his money. Ms. Donnelly opined that the victim was aware of appellant's intentions and leaned back so that he could kick appellant, but appellant produced a steering wheel lock and struck the victim.

Ms. Donnelly stated that she stood in the doorway in shock, saying, "Please quit hitting him." Appellant did not stop the attack. As the victim and appellant fought, appellant pulled the victim's foot and dragged the victim and the mattress upon which he was lying onto the floor. Appellant ordered Ms. Donnelly to take the victim's money, so she stepped across the mattress and box springs to look for his wallet, which she assumed was under the bed. When she found nothing there, Ms. Donnelly fled from the room followed by appellant. She noted that when appellant left, he had taken the victim's wallet, some checkbooks, a bowl of coins, and the weapon he used in the attack. They ran into the Plaza Trailer Park. They stopped in front of a trailer where a pit bull was chained outside. They began to argue,

-4-

and the owner of the trailer, a female, came outside and asked them to move away from her trailer. Ms. Donnelly was arrested ten minutes later. Later that day, Detective Massey interviewed her, and she gave a statement recounting the events. Ms. Donnelly identified appellant at trial.

On cross-examination, Ms. Donnelly admitted that the victim was "a trick" to her, meaning that she would "do things . . . for money." She acknowledged that she was not pregnant on the date in question. She further admitted that her intention was to assist appellant in robbing the victim but not hurting him. Ms. Donnelly stated that she did not touch the steering wheel lock but that appellant must have retrieved it from the victim's Jeep.

Ms. Donnelly agreed that she had the victim's blood on her shoes and a "splatter of blood" on her pants when she was arrested. She confirmed that she stayed in the victim's room on the inside of the door during the attack, that she entered the room briefly in an attempt to retrieve the victim's wallet, and that she never touched the victim. She did not remove any of the victim's belongings. Ms. Donnelly stated that after her interview with Detective Massey, he drove her to the Plaza Trailer Park to assist him in retrieving the weapon. Although she believed she knew where the weapon was located, they were unsuccessful in recovering it.

Ms. Donnelly identified a photograph of an item that bore the word "club" on it. She did not recall having seen the item in the victim's Jeep or touching the item while she was in the Jeep. She admitted having received narcotics from appellant on occasion. Had she received any proceeds from the robbery of the victim, she intended to use the money "to get high."

The State called the victim as its next witness. He was sixty-three years old at the time of trial. At the time of the incident, he had resided at the Plaza Inn Motel for eight to ten years. The victim testified that he suffered injuries to his skull and a finger as a result of the attack on him. However, he did not recall how the attack occurred and did not remember anything about the events of the day in question. His first memory thereafter was waking up in the rehabilitation area of Vanderbilt Hospital. He did not know who attacked him. The victim did not remember Tabitha Donnelly, either.

The State's next witness was Detective Scott Massey with the Lebanon Police Department. He responded to the Plaza Motel around 5:30 a.m. on December 23, 2008. When he arrived, Officers Lewis and Stone were on the scene, and the ambulance was en route to the hospital. When Detective Massey saw the size of the room, he requested assistance from the Crime Scene Team because it was larger than he could process by himself. He recalled receiving the victim's checkbooks from Officer Dedman. He left the

motel around 7:00 a.m. to return to the police department. He developed an idea, based on items he observed in the hotel room, that a female had been there, so he checked to see if any female with whom law enforcement was familiar had been arrested. He learned that Tabitha Donnelly had, in fact, been arrested that morning in close proximity to the crime scene. He asked that Ms. Donnelly be brought from the jail so he could speak with her and also requested to examine the clothing she had been wearing. He noticed blood on Ms. Donnelly's shoes and also noted that Ms. Donnelly had been wearing a very large, dark-colored "hoodie" style sweatshirt and sweat pants. He forwarded Ms. Donelly's clothing to the crime laboratory. Ms. Donnelly gave Detective Massey a statement implicating appellant then accompanied him to the hotel around 9:30 or 9:40 a.m. on December 23 to direct officers to the assault weapon. However, their attempt to locate the weapon was unsuccessful.

Through the course of the investigation, Detective Massey learned where appellant resided. He returned to the trailer park during the morning of December 23 and knocked on the door. Appellant opened it, turned around, and walked to the sofa, where he sat down. He looked as though he had been asleep. He was wearing boxer shorts and had a piece of toilet paper inside his nose with dried blood on it. Appellant explained that he was trying to stop a nose bleed. From the door, Detective Massey asked appellant what time he arrived at his home the previous night. Appellant responded that he had been at home all night. Detective Massey requested that appellant get dressed and accompany him to the police department.

Later in the day, Detective Massey obtained a search warrant for appellant's trailer. He also requested assistance from the Crime Scene Team in searching the area surrounding appellant's trailer. During that search, Detective Massey noticed that the underpinning of a neighboring trailer had been pulled back. He looked under the trailer and observed a bed sheet located approximately in the middle of the area under the trailer. He crawled into the space and pulled the sheet back, revealing a towel and the club that had been described by Ms. Donnelly as the weapon used by appellant. Detective Massey later found the other half of the club's mechanism behind the passenger seat of the victim's Jeep.

On cross-examination, Detective Massey stated that as part of the investigation, he obtained buccal swabs from the victim, Ms. Donnelly, and appellant. At trial, he identified photographs of shoe prints that were left on the victim's mattress and on a piece of paper. He also testified that witnesses whom they interviewed indicated that a pregnant female and a white male had attempted to "jimmy" the lock of the victim's door a few days prior to the assault. The witnesses indicated that the female they had previously seen was not Ms. Donnelly, saying, "[N]o, its not the pregnant female that we seen [sic] tonight. It's a different girl."

-6-

Detective Massey discussed another case in the area involving Ms. Donnelly but stated that she was not a suspect in the case. Rather, she was with the victim at the time when a slightly-built black male entered that victim's home and tried to steal his wallet. Detective Massey confirmed that no identifiable latent fingerprints were obtained from the crime scene. He also acknowledged that no physical evidence from the crime scene implicated appellant and that the search of appellant's trailer rendered no incriminating evidence. Appellant declined to make a statement to Detective Massey.

Dr. Jarod McKinney testified that he was a professor of emergency medicine at Vanderbilt University and that he also worked in the emergency department of Vanderbilt Hospital. The trial court accepted Dr. McKinney as an expert in the field of medicine. Dr. McKinney treated the victim when he was admitted into the emergency department. The victim suffered multiple skull fractures, facial fractures, and intracranial bleeding. He described the intracranial bleeding as being potentially life-threatening. He stated that it would have taken four to six weeks for appellant's fractures to heal. Although appellant presented in a conscious state, he experienced a seizure after the CAT scan and awakened later.

Special Agent Forensic Scientist Mark Dunlap with the Tennessee Bureau of Investigation next testified as an expert in the fields of serology and DNA analysis. He testified that exhibit 22, which contained the bed sheet, towel, and club, contained the victim's DNA. A blood stain on Ms. Donnelly's sweatshirt could not be tested further for DNA because the blood was likely transferred there by being packaged together with the sweat pants. The blood stain on her pants contained DNA from the victim as the major contributor. Some of the areas indicated that Ms. Donnelly was the minor contributor, but other stains contained DNA from a minor contributor that was insufficient for further testing. Special Agent Dunlap obtained the victim's DNA from Ms. Donnelly's shoes. The victim's checkbooks were tested and contained DNA from the victim as a minor contributor and from appellant as a major contributor. No DNA was obtained from blood stains on the doorframe of the victim's room, the scrapings from appellant's fingernails, or blood stains around the victim's bathroom. A knife found in the victim's room tested positive for the presence of his own DNA.

The State rested its case-in-chief, and the defense put forth no proof. Following deliberations, the jury found appellant guilty of especially aggravated robbery, a Class A felony, and aggravated assault, a Class C felony.

## C. Facts from Sentencing Hearing

Prior to trial, the State filed a notice of intent to seek enhanced punishment upon conviction, in which it asserted that appellant was a Range I standard offender who had three felony convictions for possession of a controlled substance. At the hearing, the parties stipulated to admission of the presentence report without the necessity of calling the probation officer to testify. Appellant relied on the following mitigating factors: (1) that he played a minor role in the commission of the offense; (2) that because of youth or old age, he lacked substantial judgment in committing the offense; (3) that he was motivated by a desire to provide necessities for his family or himself; (4) that he was suffering from a mental or physical condition that reduced his culpability; and (5) that the "catch-all" provision applied. Tenn. Code Ann. § 40-35-113(4), (6), (7), (8), (13) (2010).

The trial court considered the guidelines created by the legislature and the Tennessee Supreme Court, as well as the mitigating and enhancing factors advanced by both parties. It reviewed appellant's criminal history and noted eleven prior misdemeanors, two of which involved violence to a person, in addition to the three felony convictions for which the State produced certified judgments. The trial court disagreed with appellant's characterization that his involvement in the offense was minor. It also declined to apply factor (2), because appellant was thirty-five years old at the time of sentencing. The trial court rejected appellant's assertion that he was motivated by a desire to provide for his family based, in part on his $46,874.96 child support arrearage and lack of employment. It found that appellant presented no proof in support of his suffering from a mental or physical condition that reduced his culpability. The trial court reviewed its notes from the trial and found no circumstance that would fit into the "catch-all" provision.

The trial court found that appellant had a previous history of criminal convictions or behavior in addition to those necessary to establish the appropriate range of punishment, stating that appellant was "as close to the extreme of Range 1 as a person can possibly be without crossing that line as a Range 2 offender . . . ." Tenn. Code Ann. § 40-35-115(1) (2010 & Supp. 2012). It further found that appellant was the leader in the commission of the offense, rather than a minor participant. *Id.* at § -115(2). It found that the victim was particularly vulnerable due to his age or physical or mental ability. *Id.* at § -115(4). In weighing the enhancing factors against the lack of mitigating factors, the trial court found appellant to be "deserving of the maximum Range 1 sentence . . . ." Accordingly, the trial court imposed concurrent sentences of twenty-five years, to be served at 100% release eligibility, for especially aggravated robbery and six years, to be served at thirty percent release eligibility, for aggravated assault.

After the trial court denied appellant's motion for a new trial, this appeal follows.

## II. Analysis

### A. Trial Court's Ruling Allowing an Officer to Testify to the Victim's Statement at the Crime Scene

Appellant challenges the trial court's ruling permitting Officer Lewis to testify with regard to the victim's statement at the crime scene indicating that the perpetrator had been a large, black male who "lived down the way." In his brief, appellant combines the two statements the victim made to Officer Lewis. As clarified above, the victim made two statements to Officer Lewis, but the State only sought admission of the first one, admitting that the second statement was testimonial in nature. In his first statement, the victim said that he had been beaten by a large black man with a pipe. In his second statement, which was not introduced at trial, he indicated that the black man "lived down the way."

Following a pre-trial hearing on the matter, the trial court ruled that the first statement was nontestimonial and that Officer Lewis asked the question to enable police officers to meet an ongoing emergency, not for the primary purpose of criminal prosecution. With regard to whether the statement was testimonial or nontestimonial, we review the trial court's application of law to the facts of this case under our de novo standard of review without a presumption of correctness. *State v. Daniel*, 12 S.W.3d 420, 423 (Tenn. 2000). The trial court also determined the statement fell within the hearsay exceptions of Tennessee Rule of Evidence 803, subsections (2), (3), and (4).[2]

In our first inquiry, we must determine the testimonial or nontestimonial character of the statements offered. Our supreme court has held:

---

[2] We are aware of the disagreement among panels of this court regarding the appropriate standard of review of the admissibility of hearsay evidence. *See State v. Dotson*, 254 S.W.3d 378, 392 (Tenn. 2008) (in considering an issue involving hearsay, holding that "questions concerning the admissibility of evidence rest within the sound discretion of the trial court, and this Court will not interfere in the absence of abuse appearing on the face of the record"); *Pylant v. State*, 263 S.W.3d 864, 871 n.26 (Tenn. 2008) (maintaining that the standard of review for hearsay issues is abuse of discretion); *Willie Perry, Jr. v. State*, No. W2011-01818-CCA-R3-PC, 2012 WL 2849510, at *3 (Tenn. Crim. App. July 11, 2012) (stating that standard of review for admissibility of evidence is abuse of discretion). *But see State v. Gilley*, 297 S.W.3d 739, 760 (Tenn. Crim. App. 2008) (stating that whether a statement is offered to prove the truth of the matter asserted is "necessarily a question of law" and is not subject to review under abuse of discretion standard); *State v. Schiefelbein*, 230 S.W.3d 88, 128 (Tenn. Crim. App. 2007) (holding that appellate review of hearsay issues is de novo with no presumption of correctness); *Willie Perry, Jr.,* 2012 WL 2849510, at *7 (Bivins, J., concurring) (applying de novo standard of review to hearsay issues). It is not necessary for us to compare the merits of each position because, for purposes of our determination of this issue, the evidence is admissible under either standard of review.

When the prosecution seeks to introduce a declarant's out-of-court statement, and a defendant raises a Confrontation Clause objection, the initial determination under *Crawford* [*v. Washington*] is whether the statement is testimonial or nontestimonial. If the statement is testimonial, then the trial court must determine whether the declarant is available or unavailable to testify . . . . If the declarant is unavailable, the trial court must determine whether the accused had a prior opportunity to cross-examine the declarant about the substance of this statement. If the accused had such an opportunity, the statement may be admissible if it is not otherwise excludable hearsay. If the accused did not have this opportunity, then the statement must be excluded.

*State v. Maclin*, 183 S.W.3d 335, 351 (Tenn. 2006), *abrogated on other grounds by Davis v. Washington*, 547 U.S. 813 (2006) (internal citations omitted); *see also State v. Bowman*, 367 S.W.3d 69, 89 (Tenn. Crim. App. 2009).

The United States Supreme Court has refined the inquiry into whether a statement is testimonial or nontestimonial, holding:

Statements are nontestimonial when made in the course of police interrogation under circumstances objectively indicating that the primary purpose of the interrogation is to enable police assistance to meet an ongoing emergency. They are testimonial when the circumstances objectively indicate that there is no such ongoing emergency[ ] and that the primary purpose of the interrogation is to establish or prove past events potentially relevant to later criminal prosecution.

*Davis*, 547 U.S. at 822; *see State v. Cannon*, 257 S.W.3d 287, 302 (Tenn. 2008).

Applying this case law, we conclude that the trial court properly found the victim's first statement to be nontestimonial in nature. Officer Lewis entered a hotel room where he observed blood on several surfaces, walls, and the ceiling. After "clearing" the room, he noticed the victim and summoned emergency personnel. He then approached the victim and inquired, "What happened?" It is clear from the nature of the emergency that Officer Lewis justifiably acted with haste in summoning emergency personnel to the victim's bedside before questioning him. The fact that emergency personnel were approaching does not denigrate the nature of the "ongoing emergency" in this case. Having determined that the victim's statement was nontestimonial, we next consider whether an exception to the hearsay rule authorizes its admission.

Hearsay is defined as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Tenn. R. Evid. 801(c). Generally, hearsay is not admissible at trial unless it falls within an exception to the exclusionary rule. Tenn. R. Evid. 802.

The trial court applied Tennessee Rule of Evidence 803(2), the "excited utterance" exception, which embodies "[a] statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition." "Underlying the excited utterance exception is the theory that 'circumstances may produce a condition of excitement which temporarily stills the capacity of reflection and produces utterances free of conscious fabrication.'" *State v. Franklin*, 308 S.W.3d 799, 823 (Tenn. 2010) (quoting *State v. Land*, 34 S.W.3d 516, 528 (Tenn. Crim. App. 2000)). Our supreme court has described the "ultimate test" of whether a statement meets the excited-utterance standard as "'spontaneity and logical relation to the main event and where an act or declaration springs out of the transaction while the parties are still laboring under the excitement or strain of the circumstances and at a time so near it as to preclude the idea of deliberation and fabrication.'" *Id.* (quoting *State v. Smith*, 857 S.W.2d 1, 9 (Tenn. 1993)). Our courts have interpreted Tennessee Rule of Evidence 803(2) as setting forth three requirements for a statement to meet this exception:

> The first requirement is "a startling event or condition" that "'suspend[s] the normal, reflective thought processes of the declarant.'" Second, the statement must "relate to" the startling event or condition. This broad requirement offers "considerable leeway" such that "the statement may describe all or part of the event or condition, or deal with the effect or impact of that event or condition." The third and final requirement dictates that the declarant make the statement while "under the stress or excitement from the event or condition." This requirement considers a variety of factors, including the interval of time between the startling event and the statement.

*Id.*

We conclude that the victim certainly endured a startling event or condition when appellant attacked him. The statement the victim made to Officer Lewis related to the startling event or condition. The short interval of time between the attack and the victim's statement to Officer Lewis, together with the severity of the attack, supports the conclusion that the statements were made while the victim was still under stress from the event. The trial court properly applied this hearsay exception.

The trial court also found that Tennessee Rule of Evidence 803(3) applied to the victim's statement. The rule provides that out-of-court statements concerning "the declarant's then existing state of mind, emotion, sensation, or physical condition (such as intent, plan, motive, design, mental feeling, pain, and bodily health)" are not excluded by the hearsay rule. Tenn. R. Evid. 803(3). The Advisory Commission Comments make clear that conduct of a third party cannot be proven by a statement admitted pursuant to this exception. We conclude that the trial court erred in applying this exception to allow admission of the victim's first statement. However, any error would have been harmless in light of the trial court's proper application of Tennessee Rule of Evidence 803(2). *See* Tenn. R. App. P. 36(b).

Finally, the trial court found that Tennessee Rule of Evidence 803(4) allowed admission of the victim's statement to Officer Lewis. "Statements made for purposes of medical diagnosis and treatment describing medical history; past or present symptoms, pain, or sensations; or the inception or general character of the cause or external source thereof insofar as reasonably pertinent to diagnosis and treatment" are excluded from the prohibition against hearsay statements. Tenn. R. Evid. 803(4). The Advisory Committee Comment clarifies that such statements are limited "to declarations . . . made to treating doctors[,] . . . [and] [t]he declaration must be for both diagnosis and treatment."

> The rationale justifying the exception is two-fold: (1) a statement made by a patient to a physician is presumptively trustworthy because a patient is strongly motivated to speak the truth in order to receive proper diagnosis and treatment; and (2) any statement upon which a physician will rely as a basis for diagnosis and treatment is also sufficiently reliable for consideration by a court of law.

*State v. Stinnett*, 958 S.W.2d 329, 331 (Tenn. 1997) (citing *State v. McLeod*, 937 S.W.2d 867, 870 (Tenn.1996)).

In the case at bar, the victim made the statement in question to a law enforcement officer, not a doctor or emergency medical personnel, who were not yet in the room. The statement was not made for the purpose of medical diagnosis or treatment. The trial court improperly applied this hearsay exception. However, because the statement squarely falls within the excited utterance exception to the hearsay rule, this error was harmless. *See* Tenn. R. App. P. 36(b). Appellant is not entitled to relief on this issue.

B.  Sufficiency of the Convicting Evidence

Appellant challenges the sufficiency of the evidence supporting his convictions, contending that Ms. Donnelly was the sole perpetrator and that the evidence against him is insufficient to support his convictions. The standard for appellate review of a claim challenging the sufficiency of the State's evidence is "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (citing *Johnson v. Louisiana*, 406 U.S. 356, 362 (1972)); *see* Tenn. R. App. P. 13(e); *State v. Davis*, 354 S.W.3d 718, 729 (Tenn. 2011). To obtain relief on a claim of insufficient evidence, appellant must demonstrate that no reasonable trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *See Jackson*, 443 U.S. at 319. This standard of review is identical whether the conviction is predicated on direct or circumstantial evidence, or a combination of both. *State v. Dorantes*, 331 S.W.3d 370, 379 (Tenn. 2011); *State v. Brown*, 551 S.W.2d 329, 331 (Tenn. 1977).

On appellate review, "'we afford the prosecution the strongest legitimate view of the evidence as well as all reasonable and legitimate inferences which may be drawn therefrom.'" *Davis*, 354 S.W.3d at 729 (quoting *State v. Majors*, 318 S.W.3d 850, 857 (Tenn. 2010)); *State v. Williams*, 657 S.W.2d 405, 410 (Tenn. 1983); *State v. Cabbage*, 571 S.W.2d 832, 835 (Tenn. 1978). In a jury trial, questions involving the credibility of witnesses and the weight and value to be given the evidence, as well as all factual disputes raised by the evidence, are resolved by the jury as trier of fact. *State v. Bland*, 958 S.W.2d 651, 659 (Tenn. 1997); *State v. Pruett*, 788 S.W.2d 559, 561 (Tenn. 1990). This court presumes that the jury has afforded the State all reasonable inferences from the evidence and resolved all conflicts in the testimony in favor of the State; as such, we will not substitute our own inferences drawn from the evidence for those drawn by the jury, nor will we re-weigh or re-evaluate the evidence. *Dorantes*, 331 S.W.3d at 379; *Cabbage*, 571 S.W.2d at 835; *see State v. Sheffield*, 676 S.W.2d 542, 547 (Tenn. 1984). Because a jury conviction removes the presumption of innocence that appellant enjoyed at trial and replaces it with one of guilt at the appellate level, the burden of proof shifts from the State to the convicted appellant, who must demonstrate to this court that the evidence is insufficient to support the jury's findings. *Davis*, 354 S.W.3d at 729 (citing *State v. Sisk*, 343 S.W.3d 60, 65 (Tenn. 2011)).

Especially aggravated robbery, as indicted in this case, is defined as "the intentional or knowing theft of property from the person of another by violence or putting the person in fear" that is "[a]ccomplished with a deadly weapon[ ] and [w]here the victim suffers serious bodily injury." Tenn. Code Ann. §§ 39-13-401, -403 (2010). At trial, the State presented the testimony of Tabitha Donnelly, who placed appellant at the scene and established him as the sole attacker. Although neither appellant's fingerprints nor shoe prints were found at the

crime scene, police received from a citizen several of the victim's checkbooks that had been stolen from his motel room. The checkbooks contained DNA from appellant as the major contributor, which established his identity as one of the perpetrators. Ms. Donnelly's testimony established that appellant stole property belonging to the victim and accomplished the theft by using part of a steering wheel locking mechanism to beat the victim, which meets the definition of a deadly weapon. *See* Tenn. Code Ann. §§ 39-11-106(a)(5)(B) (2010) (defining "deadly weapon" as "[a]nything that in the manner of its use or intended use is capable of causing death or serious bodily injury"). The deadly weapon was subsequently found under a trailer located in close proximity to appellant's trailer. Expert testimony established that the victim suffered serious bodily injury. The evidence was sufficient to establish appellant's guilt of especially aggravated robbery.

As indicted in this case, aggravated assault is defined as intentionally, knowingly, or recklessly causing bodily injury to another by the use or display of a deadly weapon. Tenn. Code Ann. §§ 39-13-101, -102 (2010). The victim's DNA was found on the steering wheel mechanism, providing further proof that the mechanism was the deadly weapon appellant utilized and corroborating Ms. Donnelly's testimony. Medical testimony established the degree of appellant's bodily injury. The evidence was sufficient to convict appellant of aggravated assault. Appellant is not entitled to relief on this claim of error.

C. Trial Court's Imposition of Sentences

In his brief, appellant lists as an issue:

III.     Whether the sentence imposed is consistent with the evidence presented and consistent with applicable sentencing guidelines.

In his argument section, he states, "Finally, he seeks a review to determine whether the sentence imposed is consistent with the evidence presented and consistent with applicable sentencing guidelines." He offers no argument, citation to the record, or citation to legal authority in support of this claim. The only other mention of this alleged error is in the conclusion, wherein appellant states, "Finally, that the sentence imposed is inconsistent with the proof and applicable sentencing guidelines."

Appellant fails to offer any argument, citation to the record, or citation to relevant authorities in support of his contention. Appellate briefs *shall* contain "the contentions of the appellant with respect to the issues presented, . . . including the reasons why the contentions require appellate relief, with citations to the authorities and appropriate references to the record . . . relied on; and . . . for each issue, a concise statement of the applicable standard of review." Tenn. R. App. P. 27(a)(7) (emphasis added). In light of his

failure to properly present this issue for our review, we conclude that he has waived appellate review of his sentencing. *See* Tenn. Ct. Crim. App. R. 10(b) ("Issues which are not supported by argument, citation to authorities, or appropriate references to the record will be treated as waived in this court."); *see also Berry v. State*, 366 S.W.3d 160, 169 (Tenn. Crim. App. 2011).

## D.  Merger

Appellant was charged in a two-count indictment with aggravated assault of the victim by use of a deadly weapon, in violation of Tennessee Code Annotated section 39-13-102(a)(1)(B), and especially aggravated robbery, in violation of Tennessee Code Annotated section 39-13-403(a).  A conviction for especially aggravated robbery requires proof of use of a deadly weapon.  Tenn. Code Ann. § 39-13-403(a) (2010); *see State v. Miko T. Burl*, No. W2000-02074-CCA-R3-CD, 2002 WL 1483207, at *2 (Tenn. Crim. App. Jan. 28, 2002) (noting that when the physical acts supporting "use of a deadly weapon" for especially aggravated robbery were the same physical acts establishing "use of a deadly weapon" for the aggravated assault, the principles of double jeopardy allow only one conviction to stand because the offenses arose out of a "'single wrongful act'") (quoting *State v. Phillips*, 924 S.W.2d 662, 665 (Tenn. 1996)).  While both the State and the trial court recognized that merger of the two convictions would be proper, the judgments fail to reflect merger of the aggravated assault conviction into the especially aggravated assault conviction. *See State v. Banes*, 874 S.W.2d 73, 81 (Tenn. Crim. App. 1993) (noting that pursuant to the doctrine of merger, the lesser conviction merges with the greater offense, resulting in one judgment of conviction), *rev'd on other grounds, State v. Williams*, 977 S.W.2d 101 (Tenn. 1998).  Accordingly, we vacate the judgments of conviction in this case with instructions to the trial court to enter a single judgment of conviction noting merger of aggravated assault into especially aggravated robbery. *See State v. Forrest Melvin Moore, Jr.,* No. M2012-02059-CCA-R3-CD, 2013 WL 3874934, at *6 (Tenn. Crim. App. July 25, 2013).

## CONCLUSION

Based on our review of the record, the briefs of the parties, arguments of counsel, and relevant legal authorities, we affirm appellant's convictions but vacate the judgments and remand this matter for entry of a corrected judgment form consistent with this opinion.

_____
ROGER A. PAGE, JUDGE